# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALISSA M. JUSTISON and JOSEPH M. CAPITANI, JR., on behalf of themselves individually and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>McDONALD'S CORPORATION (a Delaware corporation),<br><br>Defendant. | C.A. No. 08-448 (LPS)<br><br><br>**MEMORANDUM OF LAW IN SUPPORT OF THE PARTIES' JOINT MOTION FOR APPROVAL OF THE SETTLEMENT AGREEMENT** |

Timothy J. Wilson (DE Bar #4323)
THE WILSON FIRM
24 Deerborne Trail
Newark, DE 19702-2044
Tel: (302) 494-0463
Fax: (302) 286-1112

Shanon J. Carson
Jonathan Berger
Sarah R. Schalman-Bergen
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Tel: (215) 875-4656
Fax: (215) 875-3053

Todd M. Schneider
Joshua Konecky
SCHNEIDER WALLACE
COTTRELL BRAYTON KONECKY LLP
180 Montgomery Street, Suite 2000
San Francisco, CA 94104
Tel: (415) 421-7100
Fax: (415) 421-7105

***Attorneys for Plaintiffs***


Dated October 5, 2010

Michael W. McDermott (DE Bar #4434)
Michael W. Arrington (DE Bar #3603)
PARKOWSKI, GUERKE & SWAYZE, P.A.
800 King Street, Suite 203
Wilmington, Delaware  19801
Tel: (302) 654-3300
Fax: (302) 654-3033

Paul R. Garry
Erika Dillon
Jason E. Barsanti
MECKLER BULGER TILSON MARICK & PEARSON LLP
123 N. Wacker Dr., Suite 1800
Chicago, IL 60606
Tel: (312) 474-7134
Fax: (312) 474-7898

***Attorneys for Defendant***

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     PROCEDURAL HISTORY.................................................................................... 2

III.    BASIC TERMS OF SETTLEMENT ..................................................................... 3

        A.    The Proposed Opt-In Plaintiffs ............................................................... 3

        B.    Distribution Of The Gross Settlement Amount And Release Of Claims ............... 4

        C.    Notice To Potential Opt-In Plaintiffs ...................................................... 6

IV.     DISCUSSION ........................................................................................................ 8

        A.    The Payouts To The Opt-In Plaintiffs Should Be Approved As A "Fair And
              Reasonable Resolution Of A *Bona Fide* Dispute"................................... 8

        B.    The Enhancement Payments To The Named Plaintiffs And Mohsin Ali Are
              Justified And Should Be Approved ......................................................... 13

        C.    The Payment To Plaintiffs' Counsel Should Be Approved Because It Is Fair And
              Reasonable ............................................................................................. 15

V.      CONCLUSION..................................................................................................... 19

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Baker v. D.A.R.A. II, Inc.*,
2008 U.S. Dist. LEXIS 81347 (D. Ariz. Sept. 24, 2008)........................................................8

*Brumley v. Camin Cargo Control, Inc*,
2010 WL 1644066 (D.N.J. Apr. 22, 2010) ................................................................9

*Camp v. Progressive Corp.*,
2004 U.S. Dist. LEXIS 19172 (E.D. La. Sept. 23, 2004) ........................................13

*Collins v. Sanderson Farms, Inc.*,
568 F. Supp. 2d 714 (E.D. La. 2008)........................................................................8

*Cooks v. Osmose, Inc.*,
2004 U.S. Dist. LEXIS 29346 (M.D. Tenn. Feb. 13, 2004) ....................................8

*Cullen v. Whitman Med. Corp.*,
197 F.R.D. 136 (E.D. Pa. 2000)........................................................................11, 15

*Dewey v. Volkswagen of America*,
No. 07-2249, 2010 WL 3018305 (D.N.J. Jul. 30, 2010) ..........................................13

*Erie County Retirees Assoc. v. County of Erie. Pennsylvania*,
192 F.Supp.2d 369 (W.D. Pa. 2002)........................................................................15

*Evans v. Lowe's Home Centers, Inc.*,
2006 U.S. Dist. LEXIS 32104 (M.D. Pa. May 18, 2006) ........................................11

*Ferguson v. Upscale Saturday Night, Inc.*,
2006 U.S. Dist. LEXIS 63663 (M.D. Fla. Sept. 6, 2006) ....................................8, 14

*Frank v. Eastman Kodak Co.*,
228 F.R.D. 174 (W.D.N.Y. 2005)............................................................................15

*Hoffman-LaRoche, Inc. v. Sperling*,
493 U.S. 165 (1989)..................................................................................................9

*In re Greenwich Pharmaceutical Sec. Litig.*,
1995 U.S. Dist. LEXIS 5717 (E.D. Pa. Apr. 26, 1995) ..........................................14

*In re Linerboard*,
2004 WL 1221350 (E.D. Pa. Jun. 2, 2004) ........................................................12, 13

*In re Linerboard Antitrust Litig.*,
   292 F. Supp. 2d 631 (E.D. Pa. 2003) ...................................................................................11

*In re Prudential Ins. Co. America Sales Practice Litig.*,
   148 F.3d 283 (3d Cir. 1998)...................................................................................14, 16

*In re Residential Doors Antitrust Litig.*,
   MDL No. 1039, Civ. A. Nos. 94-3744, 96-2125, 1998 WL 151804 (E.D. Pa. Apr. 2,
   1998) ...................................................................................13

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005)...................................................................................14

*Lake v. First Nationwide Bank*,
   156 F.R.D. 615 (E.D. Pa. 1994)...................................................................................11

*Oh v. AT & T Corp.*,
   225 F.R.D. 142 (D.N.J. 2004)...................................................................................17

*Sines v. Service Corp. Int'l*,
   2006 U.S. Dist. LEXIS 25072 (S.D.N.Y. May 1, 2006)...................................................................................8

*Tenuto v. Transworld Systems, Inc.*,
   Civ.A.No. 99-4228, 2002 WL 188569 (E.D. Pa. Jan. 31, 2002) ...........................................12

*Trotter v. Perdue Farms, Inc.*,
   253 F. Supp. 2d 812 (D. Del. 2003)...................................................................................13

**STATUTES**

29 U.S.C. § 216(b) ...................................................................................3, 14, 15, 17

29 U.S.C. § 255(a) ...................................................................................9

Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA") ............................................ *passim*

**OTHER AUTHORITIES**

29 C.F.R. § 778.114(a) (2006) ...................................................................................9

Fed. R. Civ. P. 23 ...................................................................................8, 10, 14

Fed. R. Civ. P. 30(b)(6)...................................................................................3

## I.     <u>INTRODUCTION</u>

This Fair Labor Standards Act collective action lawsuit has been settled, and Plaintiffs Alissa Justison and Joseph Capitani, Jr. ("Plaintiffs") and Defendant McDonald's Corporation ("McDonald's" or "Defendant"), respectfully submit this memorandum of law in support of their Joint Motion for Approval of the Settlement Agreement.  As discussed herein, the proposed settlement is fair and reasonable and warrants this Court's approval.

This is a wage-and-hour case alleging a nationwide violation of the federal Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), filed on July 17, 2008.  Plaintiffs are former "Assistant Manager Trainees" of corporate-owned and operated McDonald's restaurants and allege that McDonald's had a policy and practice of failing to pay Assistant Manager Trainees for all time worked during a mandatory training period.  Plaintiffs' primary claim is that they were not paid for time they spent at home studying and completing McDonald's written training materials.  McDonald's denies all liability.

The terms of the parties' settlement are set forth in a Settlement Agreement and Release (the "Settlement Agreement" or "Agreement") (attached hereto as Exhibit 1) that was negotiated after the parties engaged in extensive arms'-length settlement negotiations.  *See* Declaration of Shanon Carson ("Carson Decl.") ¶ 11.  The Settlement includes a gross cash payment of two million, four hundred and twenty-two thousand, eight hundred and fifty dollars ($2,422,850.00) (the "Gross Settlement Amount"), excluding the employer's share of applicable FICA and FUTA payroll taxes, plus any interest earned thereon.  In exchange, the Plaintiffs and potential FLSA Opt-In Plaintiffs who complete and return a Claim Form will dismiss all claims against Defendant arising out of the allegations set forth in this case for unpaid wages and overtime compensation solely during the period that they were Assistant Manager Trainees.  In addition, the Named Plaintiffs and Mohsin Ali, an Opt-In Plaintiff who essentially acted as a named

1

plaintiff in this case, have agreed to provide Defendant with a broader general release of all claims, and in return, will receive an enhanced payment of $10,000 each.  *See* Ex. 1, ¶¶ 2(c), 9(a), 19(a).

The parties and their counsel agree that the negotiated Settlement Agreement provides a fair, reasonable and adequate settlement for Plaintiffs and the collective action class of Opt-In Plaintiffs with respect to their claims for allegedly unpaid wages, interest, and other penalties arising from Defendant's alleged improper wage and hour practices at issue in this case.  Carson Decl. ¶¶ 12-17.  If approved by the Court, the Settlement would represent a superior and highly beneficial result for Plaintiffs and all Opt-In Plaintiffs who participate in the Settlement.

The parties respectfully submit that this motion should be granted because the proposed Settlement Agreement represents a fair and reasonable resolution of a *bona fide* dispute. Accordingly, the parties seek an order: 1) approving the Settlement Agreement; 2) certifying the FLSA collective action pursuant to 29 U.S.C. § 216(b) for purposes of settlement on behalf of "all individuals employed in the United States as Assistant Manager Trainees by McDonald's during the time period from February 23, 2006 to July 16, 2010"; and 3) approving the FLSA Notice and Claim Form to be sent to potential Opt-In Plaintiffs so that they can receive notice of and participate in the Settlement.

## II.   <u>PROCEDURAL HISTORY</u>

Plaintiff Justison filed her FLSA collective action Complaint in the United States District Court for the District of Delaware on July 17, 2008, which Plaintiffs amended on November 14, 2008.  (D.I. 1 and 4.)  Defendant filed its Answer on February 10, 2009.  (D.I. 21.)  The parties thereafter conducted relevant discovery and investigated the facts relating to the claims alleged, and have made a thorough study of the legal principles applicable to the claims asserted against Defendant.  The parties served and answered written discovery.  Defendant took the depositions

of the Named Plaintiffs and Opt-In Plaintiff Mohsin Ali, and Plaintiffs took the depositions of two corporate employees of Defendant pursuant to Federal Rule of Civil Procedure 30(b)(6). On October 9, 2009, Plaintiffs filed a motion to compel discovery responses from Defendant, including a list of all potential opt-in Plaintiffs, along with their contact information.  (D.I. 64.) The Court granted Plaintiffs' motion to compel on June 11, 2010.  (D.I. 73.)  Subsequently, as a result of arms'-length negotiations, the parties entered into the Settlement Agreement that is now presented to the Court for its approval.

The Settlement offers significant advantages over the continued prosecution of this case: Plaintiffs and Opt-In Plaintiffs who return a Claim Form will receive significant financial compensation and will avoid the risks inherent in the continued prosecution of this case in which Defendant asserts various defenses to its liability.  (Carson Decl. ¶ 13.)  The parties have spent considerable time negotiating and drafting the Settlement Agreement, which ensures that potential opt-in Plaintiffs are:  (1) provided with notice of the Settlement Agreement and its terms; and (2) will <u>not</u> lose their right to sue under the FLSA even after receiving notice, unless they affirmatively opt-in and receive money from the Settlement in exchange for their release.

## III.     THE TERMS OF THE SETTLEMENT AGREEMENT

### A.     The Proposed Opt-In Plaintiffs

The Settlement Agreement provides that the FLSA collective action class of potential Opt-In Plaintiffs includes "all individuals employed in the United States as Assistant Manager Trainees by McDonald's during the time period from February 23, 2006 to July 16, 2010."  (Ex. 1 at 2(h).)  The parties have agreed that, for settlement purposes only, this action may be certified as an FLSA collective action pursuant to 29 U.S.C. § 216(b).  *Id.* at ¶ 7.  Notice of the settlement will be provided to the above-defined class of potential Opt-In Plaintiffs in the form of the proposed FLSA Notice and Claim Form attached to the Settlement Agreement as Exhibits A and

B.  *Id.* at ¶ 12.  Upon a diligent and good faith review of its payroll records, McDonald's has

informed Plaintiffs that there are 2,262 potential Opt-In Plaintiffs.  *Id.* at ¶ 2(h).  By submitting a

valid and completed Claim Form, every one of the 2,262 Opt-In Plaintiffs will be eligible to

receive a Settlement Award.  *Id.* at ¶ 13.

### B.    Distribution Of The Gross Settlement Amount And Release Of Claims

Under the terms of the Settlement Agreement, within seven (7) business days after the

Court's approval of this Settlement Agreement, Defendant shall deliver to the Claims

Administrator that portion of the Gross Settlement Fund necessary to pay Plaintiffs' Counsel's

attorney's fees and costs, the enhancement payments to Named Plaintiffs and Moshin Ali, and

the costs of claims administration.  Within thirty (30) days after the Court's approval of this

Settlement Agreement, Defendant shall deliver to the Claims Administrator the remaining

portion of the Gross Settlement Fund.  Upon receipt by the Claims Administrator, these funds

shall be transferred immediately into a Qualified Settlement Fund pursuant to Internal Revenue

Code Section 1.468B-1.  *Id.* at ¶ 17(a).

The Qualified Settlement Fund will be administered by a Court-appointed Claims

Administrator, Rust Consulting, Inc., an independent and highly experienced third-party claims

administration company.  Agreement ¶¶ 2(b), 17.  *See* www.rustconsulting.com.  The Gross

Settlement Amount includes amounts to cover:  1) the enhancement payments of $10,000.00

each to the two Named Plaintiffs and Mohsin Ali, an Opt-In Plaintiff who essentially acted as a

named plaintiff in this case; 2) Plaintiffs' Counsel's attorney's fees and costs; and 3) the costs of

administration of the settlement by the Claims Administrator, not to exceed $50,000.00.  *Id.* ¶ 19.

Plaintiffs' Counsel seeks, and Defendant has agreed to pay, an award of attorneys' fees in an

amount not to exceed $800,000.00, which is approximately one-third of the Gross Settlement

Amount, and $16,000.00 in Plaintiffs' Counsel's costs of suit.  *Id.* ¶ 19(b).  The balance of the

Gross Settlement Amount shall constitute the Net Settlement Amount from which awards to Opt-In Plaintiffs (*i.e.*, those who return the Court-approved Claim Form) will be calculated.  *Id.* ¶ 20.

Each Opt-In Plaintiff shall be treated the same for the purpose of calculating individual Settlement Awards.  *Id.* ¶ 20(a).  The Net Settlement Amount will be divided by the number of Opt-In Plaintiffs to determine each Opt-In Plaintiffs' individual share of the Net Settlement Amount.  The Opt-In Plaintiffs and Named Plaintiffs will each receive an equal share of the Net Settlement Amount, and will receive a minimum amount of $675.00 each (*i.e.*, the Net Settlement Fund = $1,526,850.00 divided by 2,262), and a maximum amount of $1,100.00 each.[1] *Id.*

Fifty percent (50%) of each Settlement Award will be treated as back wages subject to W-2 reporting and normal payroll taxes and withholding will be deducted by the Claims Administrator pursuant to state and federal law on these amounts.  *Id.* ¶ 20(c).  The remaining fifty percent (50%) of each Settlement Award will be treated by all parties as non-wage penalties and liquidated damages, and will be reported on an IRS Form 1099 and will not be subject to FICA and FUTA withholding taxes.  *Id.*

If, after all distributions to participating Opt-In Plaintiffs are made, there are any monies remaining in the Qualified Settlement Fund, those monies shall be paid to a non-profit charity of McDonald's choosing, subject to the approval of Plaintiffs' Counsel and the Court, or to McDonald's Wage and Hour training and/or Wage and Hour policy development.  McDonald's may decide how and whether to split any remaining monies between these options.  If the monies

---

[1] For example, if all 2,262 potential Opt-In Plaintiffs submitted Claim Forms, the Net Settlement Amount of $1,526,850.00 would be divided into equal shares of $675.00.  If approximately sixty percent or less of potential Opt-In Plaintiffs submit valid Claim Forms, each Opt-In Plaintiff would receive the maximum $1,100.00 Settlement Award.  As Assistant Manager Trainees, all potential Opt-In Plaintiffs participated in McDonald's training program so the parties have agreed that it is equitable to use a formula that treats them the same in this Settlement.

are designated for McDonald's Wage and Hour Training or Wage and Hour policy development, then Defendant shall serve Plaintiffs' counsel, within one year from the date of approval of this Settlement Agreement, with a declaration of compliance affirming that the monies were actually used or are being used for that purpose and stating that "Pursuant to the parties' Settlement Agreement, McDonald's has used or is using all of the monies remaining in the Qualified Settlement Fund for Wage and Hour training and/or policy development."  *Id.* at ¶ 22.

In exchange for the Settlement benefits, Opt-In Plaintiffs who submit valid and timely Claim Forms will release Defendant from all "state, local or federal claims, whether known or unknown, which were asserted, or could have been asserted in this FLSA Collective Action against the Released Parties and which emanate from the same facts set forth in the FLSA Collective Action on behalf of the Opt-In Plaintiffs (or their agents, successors, assigns, heirs, executors or administrators) with respect to the time that they were employed by McDonald's as Assistant Manager Trainees."  *Id.* at ¶ 2(q) (defining "Settled Claims"); ¶ 9(b) (describing the releases in the Agreement).  In addition, in exchange for their enhancement payment, the Named Plaintiffs and Mohsin Ali have agreed to a broader general release of claims than the other Opt-In Plaintiffs.  *Id.* at ¶ 2(c) (defining "Claims Released"); ¶ 9(a) (describing the releases by Named Plaintiffs and Mr. Ali).

## C.   <u>Notice To Potential Opt-In Plaintiffs</u>

The Settlement Agreement provides what the parties believe is the fairest and most practicable procedure for notifying potential Opt-In Plaintiffs of the terms of the Settlement Agreement and their respective rights and obligations under the Agreement.  Under the terms of the Settlement Agreement, within five (5) business days after the Court's approval of this Settlement Agreement or Defendant's receipt of an appropriate confidentiality agreement signed by the Claims Administrator and Plaintiffs' Counsel, whichever occurs later, Defendant will

provide a list of all 2,262 potential Opt-In Plaintiffs, including their employee number, name, last known address, last known telephone number and social security number.  *Id.* at 2(h).

In order to provide the best notice practicable, the Claims Administrator will do the following before mailing the FLSA Notice and Claim Form: (1) run the list of potential Opt-In Plaintiffs through the U.S. Postal Service's National Change of Address database ("NCOA"); and (2) perform address searches using public and proprietary electronic resources which collect data from various sources such as utility records, property tax records, motor vehicle registration records (where allowed) and credit bureaus.  *Id.* at 12(c).

Ten (10) business days after receiving the list of potential Opt-In Plaintiffs, the Claims Administrator shall send a copy of the FLSA Notice and Claim Form to all 2,262 potential Opt-In Plaintiffs via first-class mail, postage prepaid, using the most current mailing address information available.  *Id.* at 12(d).  Any FLSA Notice returned as non-delivered at least ten (10) business days before the expiration of the 60-day Claims Submission Period will be re-sent to the forwarding address provided.  *Id.*; *see also id.* at 2(d) (defining "Claims Submission Period"). The Claims Administrator may also call last-known telephone numbers (and telephone numbers updated through public and proprietary databases) of Opt-In Plaintiffs whose FLSA Notice is returned as non-delivered to attempt to obtain their current addresses, and will send a reminder postcard thirty (30) days after the notice is initially mailed.  *Id.* at 12(e) (f) & (g).

Additionally, Plaintiffs' Counsel may describe the terms of the Agreement on their websites to assist potential Opt-In Plaintiffs in further understanding their rights under the Settlement Agreement, and Defendant may provide the FLSA Notice and Claim Form and communicate about the settlement with its current employees who are potential Opt-In Plaintiffs, consistent with the terms of the Agreement.  *Id.* at 12(i)&(j).

7

In order to be considered valid and timely, an Opt-In Plaintiff must submit their executed Claim Form within sixty (60) days of the date the FLSA Notice and Claim Form are mailed to the potential Opt-In Plaintiffs.  *Id.* at 2(d).

## IV.    DISCUSSION

The parties respectfully request that the Court enter the accompanying proposed order approving the settlement of this FLSA action because it is fair and reasonable, was negotiated at arms'-length, and provides an excellent benefit to the potential Opt-In Plaintiffs.

### A.    The Payouts To The Opt-In Plaintiffs Should Be Approved As A "Fair And Reasonable Resolution Of A *Bona Fide* Dispute"

Although the Third Circuit Court of Appeals has never specifically addressed the standards to be applied in evaluating the fairness of an FLSA collective action settlement, it generally is accepted that courts should review collective action settlements to ensure "a fair and reasonable resolution of a *bona fide* dispute."  *Ferguson v. Upscale Saturday Night, Inc.*, 2006 U.S. Dist. LEXIS 63663, at *2 (M.D. Fla. Sept. 6, 2006) (citing *Lynn's Food Stores, Inc. v. United States Dept. of Labor*, 679 F.2d 1350, 1354-55 (11th Cir. 1982)); *accord Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 719 (E.D. La. 2008); *Baker v. D.A.R.A. II, Inc.*, 2008 U.S. Dist. LEXIS 81347, at *4-5 (D. Ariz. Sept. 24, 2008); *Carey Space Coast Quality Lawn Maintenance & Landscaping, Inc.*, 2006 U.S. Dist. LEXIS 45957, at *3-5 (M.D. Fla. July 6, 2006); *Sines v. Service Corp. Int'l*, 2006 U.S. Dist. LEXIS 25072, at *2 (S.D.N.Y. May 1, 2006); *Cooks v. Osmose, Inc.*, 2004 U.S. Dist. LEXIS 29346, at *3-4 (M.D. Tenn. Feb. 13, 2004).  "The primary focus of the Court's inquiry in determining whether to approve the settlement of a FLSA collective action is not, as it would be for a Rule 23 class action, on due process concerns, but rather on ensuring that an employer does not take advantage of its employees in settling their claim for wages."  *Collins*, 568 F. Supp. 2d at 719.  Here, the

8

proposed payouts to the Opt-In Plaintiffs are fair and reasonable for at least seven separate and independent reasons.

First, the Settlement provides participating Opt-In Plaintiffs with the recovery of a minimum of $675.00 and a maximum of $1,100.00 in consideration of unpaid overtime hours worked during their initial training period with McDonald's as an Assistant Manager Trainee. This case involves ***only time worked while in the Assistant Manager Trainee position, and the only claims released are claims that arose with respect to this initial training period***.  The above amounts were carefully negotiated based on the discovery taken to date, including the depositions of the Named Plaintiffs and Opt-In Plaintiff Moshin Ali, as well as relevant documents and data produced by Defendant.

More specifically, the settlement amounts being paid to participating Opt-In Plaintiffs are based on a generous assumption of ***12.5 unpaid overtime hours per week*** for the time period of Defendant's Assistant Manager Trainee training program which for the average participant is approximately 12 weeks.  The settlement amounts negotiated are also based on an assumption that the regular rate of pay for Assistant Manager Trainees, based on their approximate salary during the relevant time period, is $13 per hour and that their hourly rate for purposes of calculating damages for unpaid overtime hours worked is $6.50 per hour.[2]  The parties have also negotiated that all Opt-In Plaintiffs, regardless of whether they worked less (or more) than the full approximately twelve-week training period, will share equally in the entire Net Settlement

---

[2] During discovery, McDonald's produced evidence demonstrating that its Assistant Manager Trainees were paid overtime compensation utilizing the FLSA's fluctuating workweek doctrine. For settlement purposes only, the parties have agreed that the fluctuating workweek doctrine is applicable with respect to calculating the back pay settlement award, such that each hour worked over forty hours per week should be paid at one-half times the regular rate.  *See* 29 C.F.R. § 778.114(a) (2006); *Brumley v. Camin Cargo Control, Inc,* 2010 WL 1644066 (D.N.J. Apr. 22, 2010) (discussing application of the fluctuating workweek doctrine in damages calculation).

9

Amount, with a cap of $1,100 per person, ***which is greater than 100% of an individual's***
***damages utilizing the formula resulting from the assumptions set forth above*** (*i.e.*, 12.5 unpaid
hours per week x 12 weeks x $6.50 = $975.00 = 100% of an individual Opt-In Plaintiffs'
estimated damages).  Even if 100% of the potential Opt-In Plaintiffs file Claim Forms (which
would result in the minimum distribution of $675.00 per person), each Opt-In Plaintiff will
receive approximately 70% of his or her back wages for the estimated 150 hours of unpaid
overtime hours during the approximately twelve-week training period.  The parties agree,
however, that it is highly unlikely for there to be 100% participation in the return of Claim Forms
and therefore expect that participating Opt-In Plaintiffs will receive 100% or more of their
estimated damages.  This is an excellent result for the Opt-In Plaintiffs, especially considering
the risks of litigation and the fact that a class had not even been certified yet in this case.

Second, the parties have agreed that the relevant time period for purposes of the
Settlement Agreement goes back three years from the date of the Settlement Agreement, but also
taking into account the parties' tolling agreement, *i.e.*, to February 23, 3006.  This permits
individual Opt-In Plaintiffs to participate in the settlement even if they worked as an Assistant
Manager Trainee before the two-year statute of limitations period that generally applies to FLSA
claims absent proof of a willful violation.  *See* 29 U.S.C. § 255(a).  In the absence of settlement
and a continued tolling agreement between the parties, potential Opt-In Plaintiffs would be
required to affirmatively opt-in to this action in order to toll the FLSA's statute of limitations.
*See Woodard*, 250 F.R.D. at 193 (citing 29 U.S.C. § 256(b)).  Moreover, in order to effectively
apprise Opt-In Plaintiffs of their FLSA opt-in rights, Plaintiff would be required to successfully
move for conditional certification of the FLSA collective action class and for Court-supervised
notice of the lawsuit to the potential Opt-In Plaintiffs.  *See generally Hoffman-LaRoche, Inc. v.*

*Sperling*, 493 U.S. 165 (1989).  Here, the Settlement Agreement enables participating Opt-In Plaintiffs to recover for work performed that would most likely otherwise be barred by the relevant statute of limitations, and also presumes that Plaintiffs would be able to prove that McDonald's acted willfully in violating the FLSA, although McDonald's vigorously contests that it did so.  For these reasons, this Settlement and the relevant time period it allows greatly benefits the potential Opt-In Plaintiffs and would not be possible in the absence of a Court-approved settlement.

Third, because the notice and claim forms will be sent to the 2,262 potential Opt-In Plaintiffs in the context of a settled case (rather than an adverse litigation), it is expected that the level of Opt-In Plaintiff participation will be significantly enhanced.  In Plaintiffs' counsel's experience, many employees are unwilling to join an FLSA lawsuit where the employer actively opposes the lawsuit and a favorable outcome is not assured.  Here, the notice form informs the employees that the lawsuit has been amicably resolved and that a payment is assured.  This will enable more employees to affirmatively benefit from the Settlement.

Fourth, and very importantly, this is an opt-in settlement.  Any potential Opt-In Plaintiffs who do not complete and return a claim form and therefore affirmatively make their own decision to join in the settlement are free to independently pursue their FLSA rights either now or at a later date – or are free not to pursue their rights.  This is <u>not</u> a Rule 23 "opt-out" settlement in which a class member's inaction results in a waiver of their legal rights.  Here, because the case is being settled as an FLSA collective action pursuant to 29 U.S.C. § 216(b), the only employees covered by the settlement are those who, after reviewing the notice form, affirmatively decide to join in the settlement by mailing in their Claim Form.  Court approval of the settlement merely triggers a process in which potential Opt-In Plaintiffs decide for

themselves whether the proposed settlement is desirable for them.  No person's rights are affected unless they return the Claim Form.

Fifth, the Settlement Agreement enables potential Opt-In Plaintiffs to avoid significant litigation risks, including, *inter alia*, the possibility that the Court would not ultimately view this lawsuit as appropriate for collective action treatment due to alleged dissimilarities among individual Opt-In Plaintiffs, and the possibility that even if an FLSA collective action was eventually certified in the context of litigation, that Plaintiffs would not prevail, given Defendant's staunch position that at all times it has observed its obligations under the FLSA.

Sixth, the Settlement Agreement enables participants to obtain a recovery without delay and without incurring individual litigation costs and additional attorneys' fees and costs.  Absent settlement, it is unlikely that individual Opt-In Plaintiffs would commence individual lawsuits. By participating in this collective action settlement, participating Opt-In Plaintiffs can tap into the efficiencies and economies of the collective action device, which enables workers with low-dollar individual claims (as exist here) to pursue their FLSA rights by pooling resources with similarly situated workers.  *See Evans v. Lowe's Home Centers, Inc.*, 2006 U.S. Dist. LEXIS 32104, *15 (M.D. Pa. May 18, 2006) (FLSA collective action device serves objectives of "lowering cost and limiting the controversy to one proceeding to efficiently resolve the common issues of law and fact").

Seventh, the Settlement Agreement is the product of arms-length bargaining conducted by experienced legal counsel.  This factor weighs heavily in favor of the Court's approval.  *See, e.g., In re Linerboard Antitrust Litig.*, 292 F. Supp.2d 631, 640 (E.D. Pa. 2003) ("A presumption of correctness is said to attach to a class settlement reached in arms'-length negotiations between experienced, capable counsel after meaningful discovery"); *Lake v. First Nationwide Bank*, 156

F.R.D. 615, 628 (E.D. Pa. 1994) (giving "due regard to the recommendations of the experienced counsel in this case, who have negotiated this settlement at arms' length and in good faith").

Based on the above-stated reasons, the Settlement is a fair and reasonable resolution of a *bona fide* dispute, and the parties jointly requests the Court's approval of their Agreement.

### B.     The Enhancement Payments To The Named Plaintiffs And Mohsin Ali Are Justified And Should Be Approved

Pursuant to the Settlement Agreement, Defendant has agreed to pay the two Named Plaintiffs and Mohsin Ali, an Opt-In Plaintiff who essentially acted as a named plaintiff in this case, enhancement payments of $10,000 each.  *See* Agreement at ¶ 19(a).  This amount will be paid in addition to their recovery of unpaid overtime for their efforts in bringing and prosecuting this matter.  *Id.*

"[C]ourts routinely approve incentive awards to compensate named plaintiffs for services they provided and the risks they incurred during the course of the class action litigation."  *Cullen v. Whitman Med. Corp*., 197 F.R.D. 136, 145 (E.D. Pa. 2000).  It is particularly appropriate to compensate named representative plaintiffs with incentive awards where they have actively assisted plaintiffs' counsel in their prosecution of the litigation for the benefit of a class.  *Tenuto v. Transworld Systems, Inc*., Civ.A.No. 99-4228, 2002 WL 188569, at *5 (E.D. Pa. Jan. 31, 2002); *see also In re Linerboard*, 2004 WL 1221350, at *18 (E.D. Pa. Jun. 2, 2004) ("Like the attorneys in this case, the class representatives have conferred benefits on all other class members and they deserve to be compensated accordingly.").

Here, the proposed enhancement payments are justified by the benefits that the Named Plaintiffs and Mr. Ali's diligent efforts have brought to the 2,262 potential Opt-In Plaintiffs. These three individuals took the significant risk of coming forward to represent the interests of their fellow employees.  They have all worked in the same regard with Plaintiffs' Counsel,

13

providing background information about their employment, about Defendant's policies and practices and about the allegations in this lawsuit.  Carson Decl. ¶ 17.  They have responded to discovery and have each given a deposition.  *Id.*  They risked their reputations in the community and in their places of employment in order to participate in this case on behalf of the potential Opt-In Plaintiffs.  *Id.* at ¶ 17.

Moreover, and importantly, unlike in other cases where a proposed incentive award is based merely on the named Plaintiffs' role in bringing and prosecuting the case, here, the enhancement payments are amply justified by the fact that unlike the Opt-In Plaintiffs who will return Claim Forms, the Named Plaintiffs and Mr. Ali have negotiated and agreed to a general release that is much broader than the release signed by other participating Opt-In Plaintiffs.  Compare Agreement at ¶ 2(q) (defining "Settled Claims"); ¶ 9(b) (describing the releases of Opt-In Plaintiffs) *with* ¶ 2(c) (defining "Claims Released"); ¶ 9(a) (describing the releases by Named Plaintiffs and Mr. Ali).

The relatively small enhancement payments requested in this case are also in line with those approved in class actions in this Circuit.  *See In re Linerboard*, 2004 WL 1221350, at *19 (approving incentive awards of $25,000 to each of five named plaintiffs); *Dewey v. Volkswagen of America*, No. 07-2249, 2010 WL 3018305, at *17 (D.N.J. Jul. 30, 2010) (approving award of $10,000 to each of nine class representatives); *In re Residential Doors Antitrust Litig*., MDL No. 1039, Civ. A. Nos. 94-3744, 96-2125, 1998 WL 151804, at *11 (E.D. Pa. Apr. 2, 1998) (approving $10,000 incentive awards to each of four named plaintiffs); *Camp v. Progressive Corp*., 2004 U.S. Dist. LEXIS 19172 (E.D. La. Sept. 23, 2004) (approving award of $10,000 to named plaintiff and incentive awards of $1,000 to $2,500 to other FLSA collective action members who assisted in the litigation).

14

For these reasons, the enhancement payments to the Named Plaintiff and Mr. Ali should be approved as fair and reasonable.

### C. The Payment To Plaintiffs' Counsel Should Be Approved Because It Is Fair And Reasonable

Pursuant to the Settlement Agreement, Plaintiffs' Counsel's fees shall be Eight Hundred Thousand Dollars, which is approximately 33% of the Gross Settlement Amount. This amount will compensate Plaintiffs' Counsel for work already performed in this case as well as all of the work remaining to be performed in this case, including but not limited to documenting the Settlement, securing Court approval of the Settlement, making sure that the Settlement is fairly administered and implemented, and obtaining dismissal of the action. Plaintiffs' Counsel's costs shall be Sixteen Thousand Dollars, which take into account Plaintiffs' Counsel's current costs of $15,638.11 as well as any additional expenses that may be incurred in administering this Settlement. *See* Agreement at ¶ 19(b)(i); Carson Decl. ¶¶ 25-28 (referring to the Declarations of Joshua G. Konecky and Timothy J. Wilson).

Under the FLSA, Plaintiffs may recover their attorneys' fees and expenses under the statute's fee-shifting provision. *See* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). Where attorney's fees and litigation costs are awarded as part of a collective action settlement, the Court must ensure the reasonableness of such fees. *See Ferguson*, 2006 U.S. Dist. LEXIS 63663, at *4-6; *Carey*, 2006 U.S. Dist. LEXIS 45957, at *5-8.

In the context of a Rule 23 class action, the Third Circuit has established two methods for evaluating the award of attorneys' fees: (1) the lodestar approach; and (2) the percentage of the recovery approach. *In re Prudential Ins. Co. America Sales Practice Litig.*, 148 F.3d 283, 333

(3d Cir. 1998).  The Third Circuit has emphasized that "[t]he percentage of recovery method is generally favored in common fund cases because it allows courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'"  *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005).

Here, the recovery of approximately one third (approximately 33%) of the gross settlement amount in attorneys' fees is fair and reasonable, especially given that the Net Settlement Amount (the amount remaining after attorneys' fees, incentive awards and claims administration costs are deducted) was separately negotiated and calculated to provide participating Opt-In Plaintiffs with an amount approximating 100% of their back pay damages under the FLSA (once a reasonable opt-in rate is accounted for).  *Chemi v. Champion Mortg.*, No. 2:05-cv-l238, 2009 WL 1470429, at *12 (D.N.J. May 26, 2009); *see also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d at 300 (review of 289 settlements demonstrates "average attorney's fee percentage [of] 31.71%" with a median value that "turns out to be one-third"); *In re Greenwich Pharmaceutical Sec. Litig.*, 1995 U.S. Dist. LEXIS 5717, *17 (E.D. Pa. Apr. 26, 1995) (class action "fee awards generally range from 19 to 45 percent of the settlement fund"); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 188-89 (W.D.N.Y. 2005) (approving attorneys' fees representing 38.26% of the total settlement fund in an FLSA settlement); *Erie County Retirees Assoc. v. County of Erie. Pennsylvania*, 192 F. Supp.2d 369, 382-83 (W.D. Pa. 2002) (38% of common fund awarded in ADEA collective action case brought pursuant to 29 U.S.C. §216(b)); *see also Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 150 (E.D. Pa. 2000) (concluding "that an award of one-third of the settlement fund is reasonable in consideration of other courts' awards").

16

In addition, the proposed attorneys' fee is strongly justified based on the risks assumed by Plaintiffs' Counsel and the result obtained.  This was a complicated and uncertain collective action case in which Defendant vehemently contested liability.  Defendant claimed throughout the litigation (and continues to claim) that it had proper procedures in place to, and in fact did, pay its Assistant Manager Trainees for the time they worked during the training period.  It is also a case that does not lend itself to easy proof of liability or damages given that, by definition, there are no records of the "off-the-clock" work that Plaintiffs alleged they worked while at home.  Plaintiffs' Counsel assumed a very real risk in taking on this contingent fee case. Plaintiffs, through their counsel, took on Defendant McDonald's, a vast corporation with far more resources than Plaintiffs' Counsel.  Plaintiffs' Counsel took the case on a contingency basis, and invested time, effort, and money over a period of years with no absolutely no guarantee of any recovery.

Despite these risks and difficulties, the results obtained by Plaintiffs' Counsel through the Gross Settlement Amount of $2,422,850.00 is sufficient to support its fee award. The nationwide settlement provides compensation for a collective action class of 2,262 individuals, and given anticipated claim rate, awards are likely to be 100% or more of claimed damages for every participating Opt-In Plaintiff.  As a result of the Settlement Agreement, many of the potential Opt-In Plaintiffs will be provided with awards of hundreds or over a thousand dollars, for claims that were almost certainly too small for them, or for any attorneys, to pursue on an individual basis.

Moreover, the time Plaintiffs' Counsel – three law firms working jointly and cooperatively – has expended on this lawsuit provides a reasonable comparison for the fee award.  Here, Plaintiffs' Counsel have collectively spent approximately **1,649** hours prosecuting

this litigation for over two years on a contingent basis.  Plaintiffs' Counsel's total current

lodestar  is currently **$651,893.50**.  Carson Decl. ¶ 23 (referring to the Declarations of Joshua G.

Konecky and Timothy J. Wilson).  This lodestar was calculated using Plaintiffs' Counsel's

standard rates.  Plaintiffs' Counsel's estimate that its total lodestar will be even more after the

settlement is fully administered and completed.

Plaintiffs' Counsel have each attached detailed declarations concerning the time worked

on this case by each of the law firms involved, with a general description of the work performed

and the reasons therefore, along with their hourly billing rates (which are the elements that

determine Plaintiffs' Counsel's lodestar).  *See* Carson Decl.; Konecky Decl.; Wilson Decl.

Plaintiffs' Counsel worked closely and cooperatively with one another to distribute work

assignments, and avoided duplication of effort and unnecessary expenditure of time.  *See* Carson

Decl. at ¶ 8.

Accordingly, the proposed attorneys' fee award will ultimately result in a multiplier of

only approximately 1.2 of Plaintiffs' Counsel's final lodestar.  Carson Decl. at ¶ 23.  This cross-

check provides a reasonable comparison, and is less than the lodestar multiplier that has been

used by other district courts.   In *Prudential*, the Third Circuit noted, based on a review of

common fund cases, "[m]ultipliers ranging from one to four are frequently awarded in common

fund cases, when the lodestar method is applied."  148 F.3d at 341.

In addition to being entitled to reasonable attorneys' fees, the FLSA provides for the

reimbursement of costs.  *See* 29 U.S.C. § 216(b).  Plaintiffs' Counsel's costs include reasonable

out-of-pocket expenditures.  *See Oh v. AT & T Corp*., 225 F.R.D. 142, 154 (D.N.J. 2004)

(finding expenses such as "(1) travel and lodging, (2) local meetings and transportation, (3)

depositions, (4) photocopies, (5) messengers and express service, (6) telephone and fax, (7)

Lexis/Westlaw legal research, (8) filing, court and witness fees, (9) overtime and temp work. (10) postage, (11) the cost of hiring a mediator, and (12) NJ Client Protection Fund *pro hac vice*." to be reasonable). The expenses incurred in this litigation to date are described in detail in the accompanying declarations of Plaintiffs' Counsel. Carson Decl. at ¶¶ 25-28; Konecky Decl. at ¶ 8; Wilson Decl. at ¶ 8. The expenses are of the type typically billed by attorneys to paying clients in the marketplace and include such costs as fees paid to experts, copying fees, computerized research, and travel in connection with this litigation. All of these expenses were reasonable and necessary for the successful prosecution of this case, and pursuant to the terms of the Settlement Agreement, Defendant does not object to the request for costs.

## V.    **CONCLUSION**

For the above reasons, the parties respectfully requests that the Court sign and enter the accompanying proposed order approving the Settlement Agreement.

Respectfully submitted,

THE WILSON FIRM                                   PARKOWSKI, GUERKE & SWAYZE, P.A.


 /s/ *Timothy J. Wilson*                            /s/ *Michael W. McDermott*

_____           _____
Timothy J. Wilson (DE Bar #4323)         Michael W. McDermott (DE Bar #4434)
THE WILSON FIRM                             Michael W. Arrington (DE Bar #3603)
24 Deerborne Trail                            800 King Street, Suite 203
Newark, DE 19702-2044                       Wilmington, Delaware  19801
Tel: (302) 494-0463                           Tel: (302) 654-3300
Fax:  (302) 286-1112                          Fax: (302) 654-3033

Shanon J. Carson                             Paul R. Garry
Jonathan Berger                              Erika Dillon
Sarah R. Schalman-Bergen                     Jason E. Barsanti
BERGER & MONTAGUE, P.C.                  MECKLER BULGER TILSON MARICK
1622 Locust Street                            & PEARSON LLP
Philadelphia, PA 19103                        123 N. Wacker Dr., Suite 1800
Tel: (215) 875-4656                           Chicago, IL 60606
Fax:  (215) 875-3053                          Tel: (312) 474-7134

Todd M. Schneider
Joshua Konecky
SCHNEIDER WALLACE
COTTRELL BRAYTON KONECKY LLP
180 Montgomery Street, Suite 2000
San Francisco, CA 94104
Tel: (415) 421-7100
Fax: (415) 421-7105

*Attorneys for Plaintiffs*

Dated: October 5, 2010

Fax: (312) 474-7898

*Attorneys for Defendant*

20